**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0671n.06
Filed: November 4, 2008

**No. 07-3869**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| YONG ZHANG ZHU, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS. |
| | ) | |
| MICHAEL B. MUKASEY, | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE: DAUGHTREY and MOORE, Circuit Judges and DUGGAN***, **District Judge**

**DUGGAN, District Judge.** Petitioner Yong Zhang Zhu, a citizen of the People's Republic of China, appeals the Board of Immigration Appeals' ("BIA") determination that he was not entitled to asylum or withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), or protection under the regulations implementing the United States Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. §§ 1208.16-1208.18. Because substantial evidence supports the BIA's determination that Petitioner was not entitled to relief, we **AFFIRM** the decision of the BIA.

## I. BACKGROUND

**A.      Statement of Facts**

---

*The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

Petitioner's application for relief was based on his practice of Falun Gong. Petitioner's parents began practicing Falun Gong in 1998. At the time, Petitioner lived with his parents in Fujian Province, China. On October 20, 1999, five to six police officers came to their home and arrested Petitioner's parents. Petitioner, who was fourteen or fifteen years old at the time, turned to his maternal uncle for help. At his asylum hearing before an Immigration Judge ("IJ"), Petitioner testified that his uncle obtained his parents' release after a week, although Petitioner did not know how this was accomplished. Petitioner further testified that when his parents returned home, they showed evidence of having been severely physically injured.

In approximately September 2000, Petitioner went to boarding school in Fazhou City, approximately a two hour car ride from his home. Petitioner initially testified that he became interested in the practice of Falun Gong a month later, in October 2000. He subsequently testified, however, that he became interested in the practice in October 2002, while home for a holiday break. But then, when presented with his written asylum application where Petitioner indicated that he began practicing Falun Gong in October 2001, Petitioner again changed his testimony to correspond to that date.

In 2002, Petitioner graduated high school and returned home to find a job. He testified that the Chinese government began cracking down against Falun Gong practitioners around this time, due to the destruction of a Chinese communications satellite by Falun Gong practitioners living abroad.

On October 28, 2002, four police officers came to Petitioner's parents' home. According to Petitioner, the officers accused Petitioner of practicing Falun Gong secretly

and then one of the officers grabbed Petitioner and pushed his hands against a wall. Petitioner testified that the officer was pressing so hard that his finger nails went into Petitioner's wrist. Petitioner further testified that his mother interceded and offered to pay the officers to release Petitioner. The officers agreed to not arrest Petitioner, so long as his parents agreed to provide information or evidence regarding the sabotage of the communications satellite. Petitioner testified that the officers left after giving his parents three days to provide the requested information.

The next day, Petitioner left his village and fled to Fuzhou City. Petitioner remained in Fuzhou City until November 2002, when he traveled to Guang Zhou (a city approximately a ten hour car ride away from Petitioner's village). In Guang Zhou, Petitioner obtained a job in a shoe store.

Petitioner testified that he left Fazhou City because his parents informed him that the police had returned to their home looking for him. Petitioner further testified that when he spoke with his parents from Guang Zhou, they said the police had returned to the house three or four times and warned of "serious consequences" if Petitioner did not report to the local police station.

After Petitioner worked at the shoe store in Guang Zhou for approximately two months, arrangements were made for him to leave China. According to Petitioner, these arrangements were made through "snakeheads" in China. Petitioner left China, traveled to France, and arrived in the United States in February 2003.

**B.     Procedural History**

The government immediately initiated removal proceedings against Petitioner upon his arrival in the United States pursuant to Section 240 of the INA. At the removal hearing before an IJ, Petitioner admitted all three charges of removability. (Joint Appendix ("J.A.") at 58.) Petitioner then filed an application for asylum under Section 208(a) of the INA, for withholding of removal pursuant to Section 241(b)(3) of the INA, and for relief under Article III of CAT. On April 10, 2006, following a hearing on Petitioner's application, the IJ issued a decision, denying Petitioner relief. The IJ rejected Petitioner's claims for relief based on the IJ's determination that inconsistencies in the evidence presented rendered Petitioner not credible. The IJ concluded that corroborating evidence was essential in Petitioner's case due to the inconsistencies in the evidence, but found such corroboration lacking. (J.A. at 81.)

In addition to finding Petitioner not credible, the IJ concluded that the two incidents on which Petitioner relied to demonstrate past persecution– which she noted were three years apart– did not constitute "persecution." (J.A. at 82-84.) The IJ further concluded that Petitioner could relocate to another area within China and not experience persecution and that therefore his alleged fear of persecution was not country wide. (J.A. at 85.) The IJ based this conclusion on the fact that Petitioner successfully relocated to Guang Zhou, secured employment there, and did not experience any difficulties or harm during his stay. Finally, the IJ wondered whether the real impetus for Petitioner's fear of returning to China was the money his family owed to the "snakeheads" for securing his release from China to the United States. (J.A. at 87-88.)

Petitioner appealed the IJ's decision to the BIA.  The BIA issued an opinion on June 7, 2007, finding no clear error in the IJ's conclusion that Petitioner was not credible and concurring with the IJ's determination that Petitioner failed to prove his claims.  The BIA did not address the IJ's additional reasons for finding that Petitioner failed to demonstrate his claims for relief.

Petitioner thereafter filed the instant *pro se* petition for review.  Petitioner contends that the BIA erroneously affirmed the IJ's adverse credibility finding because it was based on irrelevant inconsistencies that did not go to the heart of his claim.  Petitioner further argues that if the IJ had found him credible, the events he described would constitute past persecution or justify a well-founded fear of future persecution.

## II.  APPLICABLE LAW

### A.     Standard of Review

Where the BIA reviews the IJ's decision de novo and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination.  *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).  To the extent the BIA adopted the IJ's reasoning, however, the court also reviews the IJ's decision.  *See Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006).  Thus in the present matter, where the BIA issued a separate decision adopting the IJ's adverse credibility determination with supplementary findings, the Court reviews both decisions. *Id*.  The BIA, however, did not address the IJ's alternative reasons for denying Petitioner relief (i.e. that the past incidents Petitioner described did not constitute "persecution" and that Petitioner could relocate without fear of persecution in another

area of China). Therefore, if it is necessary to reach those issues, the matter should be remanded to the agency. *INS v. Ventura*, 537 U.S. 12, 16 (2002).

The court reviews the IJ's and BIA's factual findings under the substantial evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id*. (quoting 8 U.S.C. § 1252(b)(4)(B)). Credibility determinations are findings of fact and therefore are reviewed under the "substantial evidence" standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Nevertheless, the IJ's and BIA's adverse credibility determinations "must be supported by specific reasons and must be based upon issues 'that go to the heart of the applicant's claim.'" *Chen v. Gonzales*, 447 F.3d 478, 472 (6th Cir. 2006) (quoting *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)). A credibility determination "'cannot be based on an irrelevant inconsistency.'" *Sylla*, 388 F.3d at 926 (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004)). "'If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Id*. (quoting *Daneshvar*, 355 F.3d at 623) (internal quotation marks and citations omitted).

**B.      Asylum, Withholding of Removal, and Protection Under CAT Generally**

The disposition of an asylum application involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee," as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). Section 1101(a)(42)(A) of the INA defines a "refugee" as someone unwilling to return to his or her home country

"because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

An applicant for asylum bears the burden of demonstrating that "'persecution is a reasonable *possibility*' should he be returned to his country of origin." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (emphasis added) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987)). This is something less than a "probability" of persecution. *See id*. at 621. Demonstration of a well-founded fear of persecution requires proof of a subjective and an objective component: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which this fear can be deemed reasonable." *Id*. at 620 (quoting *Cardoza-Fonseca*, 480 U.S. at 430-31). Where an applicant demonstrates that he has suffered past persecution, the applicant is presumed to have a well-founded fear of future persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1989) (citing 8 C.F.R. § 208.13(b)(1)(i) (1997)). The government can rebut this presumption, but "only through establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country 'have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return.'" *Id*.

The standards required to qualify for withholding of removal or relief under CAT are more stringent than those for establishing eligibility for asylum. *Bah v. Gonzales*, 462 F.3d 637, 643 (6th Cir. 2006). In order to qualify for withholding of removal, an

applicant "must establish that there is a clear *probability* that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (emphasis added) (citations omitted). In order to obtain relief under CAT, the applicant bears the burden of establishing that "it is *more likely than not* that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (emphasis added). Thus if an applicant fails to establish eligibility for asylum, his withholding of removal and CAT claims necessarily fail.

### III. APPLICATION

The IJ based her credibility finding on the following: (1) internal inconsistencies in Petitioner's asylum hearing testimony and his written application as to when he started practicing Falun Gong; (2) inconsistencies between Petitioner's hearing testimony, written application, and a 2004 letter that his parents wrote in support of his claims for relief and protection regarding how his parents' release was obtained and whether they showed evidence of having been physically injured during their detention; and, (3) inconsistencies between Petitioner's testimony, written application, and his parents' letter regarding visits from the police after Petitioner fled to Fuzhou City. In support of its credibility determination, the BIA also cited inconsistencies with respect to the frequency of Petitioner's visits home while he was at boarding school. While testimony as to how Petitioner's uncle obtained his parents' release and the frequency of Petitioner's visits home are not relevant to his claims for relief, we find that the remaining inconsistencies go to the heart of Petitioner's claims and that they provide substantial evidence for the IJ's and BIA's credibility findings.

With respect to inconsistencies as to when Petitioner began practicing Falun Gong, the Sixth Circuit has held that "minor inconsistencies 'in dates which reveal nothing about an asylum applicant's fear for his safety' . . . would be an inadequate basis for the adverse credibility finding, . . ." *Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004).  However, there is a significant difference between an applicant's inability to recall whether he or she spent ten or fifteen days in a country– i.e., the inconsistency in *Yu*– and an applicant's inability to pinpoint the year in which he began the practice for which he claims to suffer persecution.  The first inconsistency has no bearing on whether the applicant honestly fears persecution.  The second inconsistency in comparison, as the IJ stated in ruling on Petitioner's application, goes to "the entire basis or crux of [the applicant's] claims of persecution and alleged torture."  (J.A. at 18.)

As to Petitioner's failure to include details in his written application about the physical injuries his parents allegedly suffered during their arrest in October 1999 and the police officers' threats of "serious consequences" if Petitioner failed to report during their repeated visits to his parents' home after the October 2002 incident, the Sixth Circuit has held that the absence of specific details in a written application do not support an adverse credibility determination.  *See, e.g., Liti v. Gonzales*, 411 F.3d 631, 638-39 (6th Cir. 2005) (citing *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003)).  The Second Circuit reasoned in *Secaida-Rosales* that "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding and . . . holding applicants to such a standard is not only unrealistic but also unfair."

331 F.3d at 308.  Nevertheless, Petitioner's parents also failed to include these details in their letter.  This supports the IJ's finding that Petitioner embellished the incidents in order to support his claim of persecution.

Petitioner failed to provide a reasoned explanation for why his parents did not describe their arrest and alleged physical injuries in their letter.  It was significant to the IJ, and is significant to this court, that the victims of the first of only two incidents of persecution on which Petitioner relies to support his claim of past persecution fail to mention the incident.  Even if we accept Petitioner's explanation for why his parents failed to describe the incident (i.e. because it did not involve him), this does not explain why their letter is devoid of any reference to the police officers' alleged threats of "serious consequences" if Petitioner failed to report when the officers returned to their home after Petitioner's departure.

In light of the above, we find that the IJ's and BIA's adverse credibility determinations were based on "specific reasons" that "go to the heart" of Petitioner's claims of past persecution and fear of returning to China.  As the IJ noted, Petitioner only identified two instances of alleged past persecution.  His parents failed to mention the first incident and omitted the most serious details of the second incident.  Although Petitioner testified that his sister lived in Michigan and could corroborate his testimony regarding his parents' October 1999 arrest and injuries, he failed to present her as a witness or at least present a letter or affidavit from her.  Based on the inconsistencies in the evidence presented and the absence of corroborating evidence, a fact finder

reasonably could conclude that Petitioner's testimony was fabricated or embellished and that he failed to meet his burden of proof.

## IV.  CONCLUSION

For the reasons set forth above, we find substantial evidence to support the BIA's finding that Petitioner's fear of persecution on account of his practice of Falun Gong is not credible and that he therefore has not satisfied his burden of demonstrating that "persecution is a reasonable possibility should he be returned to" the People's Republic of China.  It follows that Petitioner's claims for asylum, withholding of removal, and for relief under CAT fail. Accordingly, the decision of the BIA denying Petitioner's claims is **AFFIRMED**.