NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0215n.06
Filed: March 19, 2009

No. 08-4074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **GUO QIANG HU**, | ) |
| | ) ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| v. | ) |
| | ) **O P I N I O N** |
| **ERIC H. HOLDER, JR.**, | ) |
| | ) |
| *Defendant-Appellee*. | ) |

BEFORE:     KEITH, COLE, and McKEAGUE; Circuit Judges.

**COLE, Circuit Judge.**  Petitioner Guo Qiang Hu ("Hu"), a native and citizen of the People's

Republic of China ("China"), seeks review of an order of the Board of Immigration Appeals ("BIA")

affirming an immigration judge's denial of his motion to reopen his removal proceedings.  Hu also

seeks review of the BIA's decision denying him asylum and protection under the Convention Against

Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  For the reasons

that follow, we **DENY** the petition for review and **AFFIRM** the BIA's decision.

**I.  BACKGROUND**

A.     **Factual background**

Hu, a 47-year-old man, was born in and is a citizen of China.  On December 5, 1990, he

married Chun Yan Cai ("Cai"), and the couple lived in Shanghai.  Their son Chao Ran Hu was born

1

in Shanghai on October 15, 1992. On or about June 9, 1996, Hu arrived in the United States on a non-immigrant B-1 Visitor for Business visa, which was later extended until January 10, 1998. Cai entered the United States on November 28, 1996, and on September 12, 1997, she bore the couple's second child, a daughter named Cindy Hu. Authorities found Hu removable for violating the terms of his visa in July 2003, when local authorities reported that he and six other individuals had attempted to use fraudulent documents to apply for Michigan driver's licenses.

In his June 21, 2007 statement in support of his I-589 application for asylum and for withholding of removal, Hu stated that in 2002, he and Cai sent Cindy back to Shanghai to visit her grandparents, who were subsequently told by the local Street and Resident Committee—initially formed in the 1950's and charged with the responsibility of assisting the Chinese government in maintaining order—that because Hu and Cai had "excessively given birth" under China's family-planning policies, Hu would face fines and sterilization if he returned to Shanghai. (Certified Administrative Record ("AR") 95.) Among the materials Hu submitted as further support for his application were numerous excerpts from reports regarding China's alleged coercive family-planning policy. Hu also submitted a letter purportedly sent by a former classmate from Shanghai, Fu Xin Huang. The letter, dated June 15, 2007, informed Hu that the Street and Resident Committee was harassing his parents about Cindy's birth and that family-planning officials were sterilizing residents of Shanghai with more than one child.

## B.    Procedural history

On March 24, 2004, Hu failed to appear at a scheduled removal hearing before an immigration judge ("IJ"), and he was subsequently ordered removed in absentia to China. On

August 3, 2007, Hu moved to reopen his case, seeking asylum, withholding of removal, and adjustment of status based on his wife's previously approved I-130 petition ("Petition for Alien Relative").

The IJ denied Hu's motion to reopen on October 3, 2007 because it was untimely and because Hu failed to present evidence of "changed circumstances" in China that would justify reopening the case. Specifically, the IJ rejected Hu's claim that Cindy's birth amounted to changed circumstances because it had preceded his March 24, 2004 hearing, and because the birth of a child constitutes a change in "personal circumstances" rather than in "country conditions." The IJ also noted that the United States Department of State had gathered evidence that China does not have a policy of sterilizing individuals whose second child was born abroad.

Hu appealed the IJ's decision to the BIA, and on August 1, 2008, the BIA affirmed. The BIA also denied Hu's request for asylum and relief under the CAT. Hu now petitions this Court for review of the BIA's decision.

## II. ANALYSIS

### A. Standard of Review

Where the BIA reviews the IJ's decision de novo and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination. *Yong Zhang Zhu v. Mukasey*, 299 F. App'x 541, 544 (6th Cir. 2008) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). We review the BIA's factual findings under the substantial evidence standard. *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the

contrary.'" *Id*. (quoting 8 U.S.C. § 1252(b)(4)(B)). By contrast, when we review the BIA's "application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes," the review is de novo. *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004).

**B.**     **Motion to reopen removal proceedings**

Hu first appeals the BIA's decision affirming the IJ's denial of his request to reopen his removal proceedings. We review the denial of a motion to reopen proceedings for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992); *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (citing *INS v. Abudu*, 485 U.S. 94, 96 (1988)). An abuse of discretion occurs when "the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (addition and omission in *Allabani*). When determining whether the BIA abused its discretion, we may look only at "the basis articulated in the decision and . . . may not assume that the [BIA] considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). We review legal determinations made by the BIA de novo. *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004).

Because it is undisputed that Hu's motion was time-barred under 8 U.S.C. § 1229a(c)(7)(C)(i) (giving an applicant for asylum ninety days from the "date of entry of a final administrative order of removal" to file a motion to reopen removal proceedings), to warrant reopening of his removal proceedings, Hu was required to establish materially changed country

conditions in China occurring between the IJ's 2004 ruling and his 2007 motion to reopen. *See* 8

U.S.C. § 1229a(c)(7)(C)(ii) (no time limit to file a motion to reopen proceedings "based on changed

country conditions arising in the country of nationality. . ."); *accord* 8 C.F.R. § 1003.2(c)(3)(ii). The

BIA determined that the evidence Hu submitted to support his request to reopen contradicted his

assertions that he did not know about China's alleged sterilization policy until August 16, 2007. The

BIA reasoned that Hu's family would have informed him of local authorities' reaction to Cindy's

birth following her 2002 trip to Shanghai. The BIA also concluded that Hu had failed to establish

changed country conditions in China, explaining:

> [T]he birth of a child is a change in personal circumstances rather than a change in circumstances in the country of nationality. *Cf.* 8 C.F.R. § 1003.23(b)(34). Even if we accepted [Hu's] assertion that circumstances have changed for him in China for the birth of a second child abroad, a male with two children failed to provide evidence that such sanctions in Fujian Province or Changle City would rise to the level of persecution. *Matter of J-W-S*, 24 I[.] & N[.] Dec. 185 (BIA 2007).

(AR 3.) The BIA further noted that it had previously rejected some of the same reports submitted

by Hu, deeming them

> insufficient to demonstrate that the Chinese Government has a national policy of requiring forced sterilization of a parent who returns with children born outside of China or that the sanctions and penalties described in the aforementioned evidence would rise to the level of persecution. . . . [and] insufficient to demonstrate that the respondent has an objective well-founded fear of sterilization or other harm that rises to the level of persecution upon his return to China.

(AR 3) (internal citations omitted).

A petitioner's motion to reopen must be accompanied by "evidence [that] is material and was

not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C.

§ 1229a(c)(7)(C)(ii); *see also Allabani*, 402 F.3d at 675 (noting that an untimely motion to reopen

proceedings "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing") (internal quotation marks omitted). Substantial evidence supports the BIA's decision. Cindy's birth constitutes "changed personal circumstances," insufficient to support an untimely motion to reopen. *See Haddad v. Gonzales*, 437 F.3d 515, 517-18 (6th Cir. 2006) (noting that divorce in the United States was a personal decision that did not constitute a changed country condition in Jordan); *see also Bah v. Gonzalez*, 230 F. App'x 547, 550 (6th Cir. 2007) (finding that giving birth to a female child in this country who may be subjected to genital mutilation upon return to Guinea was a changed personal circumstance); *Wei Guang Wang v. BIA*, 437 F.3d 270, 273 (2d Cir. 2006) (concluding that the birth of two United States citizen children was evidence of changed personal circumstances rather than changed conditions in China, and did not satisfy the exception under 8 C.F.R. § 1003.2(c)(3)(ii)). In addition, as the BIA explained, Cindy was born almost seven years before Hu's March 24, 2004 removal hearing. Moreover, Hu's claim that he did not know about China's alleged sterilization policy until he received Fu Xin Huang's letter is belied by his statement that his family told him that the Street and Resident Committee had accused him of "excessively giving" birth when Cindy visited Shanghai in 2002.

Hu has also failed to demonstrate that the alleged changed country conditions have caused him an individualized threat of harm. *See Harchenko*, 379 F.3d at 410 (stating that an alien must provide "reasonably specific information showing a real threat of individual persecution"). Hu relies on numerous 2004 country reports to support his claim that because of the birth of his daughter in the United States, he will face sterilization and economic penalties upon his return to China. Hu's

evidence contravenes the May 2007 State Department document entitled *China: Profile of Asylum Claims & Country Conditions*, which states, "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad." (AR 59.)

The determination of current conditions in a particular country is within the purview of the BIA. *INS v. Ventura*, 537 U.S. 12, 16-18 (2002). We will only overturn such a determination if a "rational adjudicator looking at the record as a whole would be compelled to conclude to the contrary." *See* 8 U.S.C. § 1252(b)(4)(B). We have previously adopted the BIA's determination that "[t]he finding that children born outside of China are not counted for purposes of China's population-control policies continues to be accepted by the BIA, as well as by other courts of appeals." *Fang Huang v. Mukasey*, 523 F.3d 640, 653 (6th Cir. 2008) (citing *In re J-W-S-*, 24 I. & N. Dec. 185, 192 (BIA 2007) ("We therefore find that the evidence of record does not demonstrate that the Chinese government has a national policy of requiring forced sterilization of parents who return with a second child born outside of China.")); *In re S-Y-G-*, 24 I. & N. Dec. 247, 255 (BIA 2007) (referring to evidence "indicat[ing] that 'children born abroad, if not registered as permanent residents of China . . . are not counted against the number of children allowed by China's family[-]planning policy'"); *see also Wu v. Mukasey*, 273 F. App'x 12, 14 (2d Cir. 2008) (referring to 2004 State Department report on China and "finding that there is no evidence that returnees from the United States are being forced to undergo sterilization" and to the 2007 State Department profile, providing that "Chinese regulations stipulate that children born overseas are not counted for purposes of administering the family[-]planning policy"); *Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th

7

Cir. 2007) (same); *Shao v. Mukasey*, 546 F.3d 138, 152-54 (2d Cir. 2008) (holding that the BIA did

not err in taking administrative notice of the 2007 State Department profile of China).

Due to the contradictions between the reports submitted by Hu and the 2007 State

Department profile, the BIA's conclusion that children born abroad are not counted for purposes of

China's family-planning policies, and our previous rejection of claims similar to Hu's, substantial

evidence supports the BIA's decision, and we affirm.

**C.      Asylum**

Hu also appeals the BIA's determination that he did not qualify for asylum because the

evidence he submitted was "insufficient to demonstrate that [he] has an objective well-founded fear

of sterilization or other harm that rises to the level of persecution upon his return to China."  (AR

3.)  He asserts that if he is sent back to China, he will be persecuted because of Cindy's birth and his

desire to have more children.

Under the Immigration and Nationality Act, the Attorney General may grant asylum to an

alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to

. . . [his or her home country] because of persecution or a well-founded fear of persecution on

account of race, religion, nationality, membership in a particular social group, or political opinion."

*Liti v. Gonzales*, 411 F.3d 631, 636-37 (6th Cir. 2005) (citing 8 U.S.C. §§1101(a)(42)(A),

1158(b)(1)).  The decision to grant asylum requires a two-step inquiry, and the petitioning alien has

the burden of proof at both stages.  *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (citing *Klawitter

v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)).  First, the Attorney General must determine whether the

applicant qualifies as a refugee by deciding whether his "fear of persecution [is] subjectively genuine

and objectively reasonable." *Id.* (quoting *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004)). An alien who establishes past persecution is presumed to have a well-founded fear of future persecution. *See Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). If the applicant qualifies as a refugee, the Attorney General may then choose to exercise his discretion and grant asylum. *Ouda*, 324 F.3d at 451.

This Court reviews "administrative findings of fact concerning whether [an] alien qualifies as a refugee under a substantial evidence test." *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). Under that standard, findings of fact are treated as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Substantial evidence supports the BIA's finding that Hu failed to establish a well-founded fear of future persecution if he were removed to China. As explained above, we have adopted the BIA's finding that children born outside of China are not considered for purposes of China's population-control policies. *Fang Huang*, 523 F.3d at 653. There is also no support for Hu's assertion that monetary fines that could be levied on him for Cindy's birth would constitute persecution. Although we have found that severe economic penalties, including harsh fines, can rise to the level of persecution, *see Berdo v. INS*, 432 F.2d 824, 828 (6th Cir. 1970), we have specifically held that fines levied against couples returning to China with more children than allowed under applicable family-planning policies do *not* rise to that level. *See Xue Ying Lin v. Gonzales*, 203 F. App'x 704, 709 (6th Cir. 2006) (finding that it would be objectively unreasonable for a couple returning to China with "more children than they would have been permitted at home" to fear a fine

9

large enough to rise to the level of persecution) (citing *Li v. Gonzales*, 405 F.3d 171, 178 (4th Cir. 2005) (holding that the imposition of a fine of over one year's salary for having a child out of wedlock did not constitute persecution)).

Because Hu cannot establish a well-founded a fear of future persecution based on Cindy's birth, he does not meet his burden of establishing that he is a refugee, and we affirm the BIA's decision denying him asylum.

**D.     Relief under the CAT**

The burden placed on a petitioner to establish a claim for relief under the CAT is "significantly greater than the burden required to demonstrate eligibility for asylum." *See Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007). "Whereas asylum may be granted by the [A]ttorney [G]eneral upon a showing of a 'well-founded fear of persecution,' withholding of removal under the [CAT] requires a showing that it is more likely than not that" a petitioner would be *tortured* upon his return to his country of origin. *Id.* (finding that because petitioner could not establish a right to a grant of asylum due to changed conditions, he also could not meet the more stringent requirements of the CAT); *see also Liti*, 411 F.3d at 641 (explaining that where petitioners failed to establish eligibility for asylum, they also could not meet the heightened requirements for relief under the CAT). Because the evidence Hu presented to support his claim under the CAT was identical to the evidence that supported his failed claim for asylum, we affirm the BIA's decision denying Hu relief under the CAT.

### III.  CONCLUSION

For the foregoing reasons, we **DENY** the petition for review and **AFFIRM** the BIA's

decision in full.