NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0537n.06

No. 08-3333

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 04, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GUO PING WU, | ) | |
| | ) | |
| *Petitioner*, | ) | ON APPEAL FROM THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | **O P I N I O N** |
| | ) | |
| *Respondent*. | ) | |
| | ) | |

BEFORE:    **NORRIS and COLE, Circuit Judges; ADAMS, District Judge.**[*]

**COLE, Circuit Judge.** Petitioner Guo Ping Wu, a native and citizen of the People's

Republic of China ("China"), seeks review of a final order of removal issued by the Board of

Immigration Appeals ("BIA") denying his motion to reopen his immigration proceedings to apply

for asylum based on changed personal circumstances and changed country conditions. For the

following reasons, we **DENY** Wu's petition for review.

**I. BACKGROUND**

Wu, who is from Fujian Province, unlawfully entered the United States in 1995 without being

inspected or admitted by an immigration officer. In 1996, he was charged as being deportable for

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of
Ohio, sitting by designation.

1

having entered the country unlawfully. Wu failed to appear at his hearing, and an immigration judge ("IJ") ordered his deportation in absentia. Wu remained in the United States, and in 2002 he married another Chinese citizen. In June of 2003, they had a child. In March of 2003, Wu filed a motion to reopen his proceedings with the IJ, claiming he did not receive notice of the time and place of his hearing and seeking to apply for adjustment of status based on an employer-sponsored visa petition. The IJ denied the motion, the BIA affirmed, and this Court denied Wu's petition for review. *See Wu v. Gonzales*, No. 05-3062 (6th Cir. Oct. 24, 2005).

On March 14, 2005, Wu filed a second motion to reopen his immigration proceedings—this time with the BIA—to apply for asylum. The motion alleged that Wu had experienced a change in circumstances; namely, that his wife was expecting their second child, and that one of them would likely be forcibly sterilized if they returned to China. The motion was supported by extensive documentation of China's birth-limit policies and practices. The BIA denied the motion as untimely and barred by the restriction on successive asylum applications, noting that a change in personal circumstances, such as the birth of a child, does not constitute an exception to the limitations on motions to reopen.

Wu petitioned the Sixth Circuit for review of that decision, arguing that 8 U.S.C. § 1158(a)(2)(D)[1] permits aliens to file successive asylum petitions on the basis of either changed

---

[1] 8 U.S.C. § 1158(a)(2)(D) states: "An application for asylum may be considered, notwithstanding subparagraphs (B) [requiring alien to apply for asylum within one year of arrival in United States] and (C) [limiting alien to one asylum application], if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . . ."

personal circumstances or changed country conditions, despite the provision in 8 U.S.C. § 1229a(c)(7) that bars untimely motions to reopen unless the movant shows changed country conditions. The Sixth Circuit noted that the BIA had not addressed this non-frivolous argument and remanded to allow it do so. *See Wu v. Gonzales*, 214 F. App'x 592, 594-95 (6th Cir. 2007). Before deciding Wu's case on remand, the BIA encountered and resolved this same question in *Matter of C- W- L-*, 24 I. & N. Dec. 346 (BIA 2007). In that case, the BIA rejected the interpretation of the statutes upon which Wu relies and held that an alien subject to a final order of removal may not submit a successive asylum application without first moving to reopen his case, and that such a motion would be subject to the time and numerical limits found in 8 U.S.C. § 1229a(c)(7) unless the alien establishes eligibility for the changed-country-conditions exception set forth in that section. *Id.* at 352-53.

When Wu's case was remanded, he submitted a supplemental brief and exhibits to the BIA. In addition to arguing that 8 U.S.C. § 1158(a)(2)(D) allowed him to file an untimely asylum application based on changed personal circumstances, he raised the alternative argument that conditions in China have changed since his deportation was ordered. In support of this argument, Wu submitted three documents that were previously submitted by another petitioner in *Shou Yung Guo v. Gonzales*, 463 F.3d 109, 112-13 (2d Cir. 2006) (remanding for the BIA to consider the significance of three documents, which have subsequently come to be called the "*Guo* documents" in other cases). The first document, *Administrative Opinion on Sanctions Against Family Planning-Violations By Zheng Yu He and His Spouse*, promulgated by the Changle City Family-Planning Administration (May 22, 2003), concludes that children born abroad to Chinese nationals count for

purposes of the local birth-limitation policies, unless the parents are permanent residents overseas, and that such births will be "subject to enforcement under the Fujian Province Family-Planning Regulations." (Petitioner's Appendix ("App.") 57-58.) The second document, *Administrative Decision on Request for Directive From Fuzhou City Administration on Family-Planning in Connection with Birth of a Second Child by Zheng Yu He of Changle City Municipal Bureau of Construction and His Spouse in USA*, authored by the Fujian Province Department of Family-Planning Administration, also states that the birth of a second child abroad constitutes a violation of the local birth-limitation policies and "is subject to sanctions and penalties applied under the Fujian Province Family-Planning Regulations to returnees from overseas in other categories." (App. 61-62.) The third document, a 1999 *Q & A for Changle City Family-Planning Information Handbook*, states: "What birth-control measures are to be imposed upon birth of a first child / a second child pursuant to the provincial family-planning regulations? A[nswer]: An IUD insertion is mandatory upon birth of a first child; sterilization upon birth of a second child." (App. 64-68). The asserted implication of the *Guo* documents is that, at least in Fujian Province, parents of two children will be subjected to sterilization, even if one of the children was born in the United States.

Wu also submitted numerous other documents, including the 2006 United States Department of State Country Report on Human Rights Practices for China, a 2003 United States Department of State consular information sheet about China, newspaper articles about China's birth-control policies, and various other reports.

The BIA again denied Wu's motion to reopen. Based on *Matter of C- W- L-*, the BIA found that Wu's asylum claim based on changed personal circumstances was barred by 8 U.S.C. §

4

1229a(c)(7). On Wu's claim of changed country conditions, the BIA noted that it had recently issued two opinions, *Matter of J- W- S-*, I. & N. Dec. 185 (BIA 2007), and *Matter of S- Y- G-*, 24 I. & N. Dec. 247 (BIA 2007), in which it found that the *Guo* documents do "not demonstrate that the Chinese government has a national policy of requiring forced sterilization of a parent who returns with children born in the United States." (App. 3.) The BIA, referencing these prior opinions, stated that "if a returning national is penalized at all, the evidence suggests that he or she will be sanctioned through fines or other economic penalties which do not rise to the level of persecution or torture." (App. 3.) Wu petitioned this Court for review.

## II. ANALYSIS

### A. Standard of review

"The decision to grant or deny a motion to reopen . . . is within the discretion of the Board," 8 C.F.R. § 1003.2(a), so we review the BIA's denial of such motions for abuse of discretion. *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). An abuse of discretion occurs if the denial "'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (alterations in original) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

The BIA's factual determinations "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Sterkaj v. Holder*, 315 F. App'x 586, 588 (6th Cir. 2009); *see also Bi Feng Liu v. Holder*, 560 F.3d 485, 491-92 (6th Cir. 2009) (reviewing BIA's factual findings on motion to reopen under substantial-evidence standard);

*but see Hanan v. Mukasey*, 519 F.3d 760, 763 (8th Cir. 2008) (holding that the court lacked jurisdiction over factual determinations relating to changed country conditions asserted in motion to reopen).

The BIA may deny a motion to reopen proceedings if the movant fails to make a prima facie showing of eligibility for the underlying substantive relief. *See INS v. Abudu*, 485 U.S. 94, 104-05 (1988); *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007). To make out a prima facie case, a movant must put forth "evidence that 'reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Alizoti*, 477 F.3d at 452 (quoting *Matter of S- V-*, 22 I. & N. Dec. 1306, 1308 (BIA 2000)). Thus, Wu must show a reasonable likelihood that, if his case is reopened, he will be able to establish that changed country conditions have caused him to have a well-founded fear of forced sterilization. 8 U.S.C. § 1101(a)(42) ("[A] person who has a well founded fear that he or she will be forced to undergo [involuntary sterilization] or subject to persecution for [failure to do so] shall be deemed to have a well founded fear of persecution on account of political opinion."). Even if the movant makes out a prima facie case for relief, the BIA has discretion to deny the motion to reopen. *See* 8 C.F.R. § 1003.2(a).

**B.    Change in personal circumstances**

After Wu filed his opening brief, the Sixth Circuit decided *Zhang v. Mukasey*, agreeing with the BIA's reasoning in *Matter of C- W- L-* and rejecting the same argument now advanced by Wu with respect to his change in personal circumstances and the apparent conflict between 8 U.S.C. §§ 1158(a)(2)(D) and 1229a(c)(7)(C)(ii). *See Zhang*, 543 F.3d at 858-59. *Zhang* interpreted these two provisions to operate in conjunction such that "an alien subject to a final order of removal for

90 days or more [is required] to make a successful motion to reopen prior to consideration of a successful application for asylum," and that such a motion will not be excepted from the time and numerical limitations of § 1229a(c)(7)(C) by virtue of changed personal circumstances. *Id.* at 859. *Zhang* forecloses Wu's argument that the BIA erred in declining to reopen his case due to the birth of his second child.[1] *See also Hu v. Holder*, 318 F. App'x 348, 351 (6th Cir. 2009) (holding that birth of a child is a change in personal circumstances; citing cases).

## C.    Change in country conditions; well-founded fear of forced sterilization

Wu's remaining argument is that he has established the existence of changed country conditions in China.  To succeed, Wu must present evidence that "is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii).  "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."  8 C.F.R. § 1003.2(c)(1).  Rather than focusing on whether conditions in China had changed, the BIA simply held that Wu could not show a well-founded fear of persecution under current conditions in China.  Because this was a sufficient reason for denying Wu's motion, we will uphold the BIA's ruling on this ground, although we note that Wu has also failed to establish that conditions in China have changed since his prior proceeding.

The BIA did not abuse its discretion in finding that, if Wu's case were reopened, he could

---

[1]Wu does not allege in his briefs, nor does the record indicate, that his wife actually gave birth to a second child.  Instead, Wu continues to state that "his second child was expected to be born on October 17, 2005."  (Wu Br. 59 n.19.)

not establish a well-founded fear of forced sterilization in China. Our previous cases involving claims like Wu's have reached the same conclusion: "The finding that children born outside of China are not counted for purposes of China's population-control policies continues to be accepted by the BIA, as well as by other courts of appeals." *Fang Huang v. Mukasey*, 523 F.3d 640, 653 (6th Cir. 2008); *see also Yang Lin v. Holder*, 320 F. App'x 428, 436-37 (6th Cir. 2009) (per curiam) (holding that the BIA did not abuse its discretion in denying a motion to reopen supported by the *Guo* documents); *Hu*, 318 F. App'x at 352 (holding that substantial evidence supported "the BIA's conclusion that children born abroad are not counted for purposes of China's family-planning policies"). These cases support our determination that the BIA did not abuse its discretion in the present case.

Wu points to no evidence that parents returning to China with children born abroad have actually been subjected to forcible sterilization. The *Guo* documents merely suggest by implication that one individual might have suffered such a fate, and that other similarly situated individuals might as well. This does not satisfy the requirement that Wu present "reasonably specific information showing a real threat of individual persecution." *See Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004).

The cases cited by Wu in which other courts of appeals have granted relief to Chinese petitioners claiming fear of sterilization have involved stronger showings of an individualized risk of harm. For example, in *Xiu Zhen Lin v. Mukasey*, 532 F.3d 596, 597 (7th Cir. 2008), the petitioner submitted a letter from the governing body of her village stating that it was aware that she had given birth to a third child in the United States and that she "certainly will be subjected to sterilization

procedures" unless she obtained citizen or permanent-resident status or an advanced degree in the United States. In *Yaner Li v. U.S. Attorney Gen.*, 488 F.3d 1371, 1373 (11th Cir. 2007), the petitioner presented her own affidavit describing second-hand accounts of forced sterilizations in 2005 in her home village, as well as an affidavit from her mother stating that three women in the village had been forcibly sterilized. *See also Xiu Qin Lin v. Mukasey*, 275 F. App'x 249 (4th Cir. 2008) (similar). Despite both parties' failure to mention it in their briefs, the record contains a 2005 affidavit that Wu submitted to the BIA, in which he states that his sister, his wife's cousin, and his wife's aunt were forcibly sterilized after each of them had two children. (App. 318.) While this lends credence to Wu's fear that he or his wife will be forcibly sterilized, there is no indication that these women gave birth to their children while living abroad, so the affidavit does not undermine the BIA's conclusion that parents of children born abroad have not been subjected to forced sterilization. Overall, the evidence submitted by Wu was less probative of a likelihood of forced sterilization than that offered in other cases, and we cannot say that the BIA abused its discretion in denying his motion to reopen.

Wu raises several other challenges to the BIA's decision, but, as described below, these challenges fail.

1.     *Absence of documents from the record in this case that were present in* Matter of S- Y- G- *and* Matter of J- W- S- *does not compel a remand*

Wu argues that the BIA should not have relied on *Matter of S- Y- G-* and *Matter of J- W- S-* because the records in those cases contained additional documents that are not present here—in particular, a 2007 State Department report called *China: Profile of Asylum Claims and Country*

*Conditions* and an attached letter (the "Noyes letter")—that supported the BIA's conclusion that returning aliens have not been subjected to forced sterilization. Wu seeks a remand directing the BIA to limit its analysis to the documents in the record of this case. Such a remand is unnecessary for several reasons.

First, if we were to remand, the BIA could simply take administrative notice of the 2007 State Department report and other government documents on which it has relied in past cases, and there is little doubt that it would then hold, as it has previously, that those documents outweigh the *Guo* documents on which Wu relies. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (allowing administrative notice of the contents of official documents); *Matter of J- W- S-*, 24 I. & N. Dec. at 189-90 (noting that 2007 State department report states that children of Chinese parents returning from overseas are "not . . . counted" for birth-planning purposes in China, and taking administrative notice of other State Department and Canadian government documents supporting this conclusion); *Matter of S- Y- G-*, 24 I. & N. Dec. at 255-56 (noting that 2007 State Department document outweighs *Guo* documents). Remanding to the BIA in the face of this clear precedent would be futile. *See Yang Lin*, 320 F. App'x at 437 ("[I]t is unnecessary to remand in cases like this one where we can predict with confidence that the agency would reach the same result absent the error.").

Second, part of Wu's objection to the BIA's reliance on *Matter of J- W- S-* and *Matter of S- Y- G-* is that he "did not have an opportunity to address the particular issue" raised in the documents relied on in those cases that were not part of the record in this case. (Br. 58.) This argument lacks merit—Wu engaged in an extensive critique of the Noyes letter in his brief to the BIA. (App. 42-46.)

Third, the present record contains indications that returning Chinese citizens with American-born children are not forcibly sterilized, and Wu has not put forth compelling evidence to the contrary. For example, the 2004 State Department country report states that "U.S. diplomats in China are not aware of any cases in which returnees from the United States were forced to undergo sterilization procedures on their return." (App. 714.) As noted above, Wu is unable to fill this gap in the evidence. *See, e.g.*, *Zheng v. Mukasey*, 546 F.3d 70, 73 (1st Cir. 2008) (affirming BIA's denial of reopening where petitioner "failed to bring forth any evidence which would call into question the [Board]'s determinations in" *S- Y- G-* and *J- W- S-*). Therefore, the BIA's reliance on prior cases with different records does not compel a remand.

  2.  *Wu fails to distinguish the BIA's decisions in* S- Y- G- *and* J- W- S-

Wu attempts to distinguish *Matter of J-W-S-*, which the BIA found "squarely on point," by pointing out that *Matter of J-W-S-* dealt with an asylum appeal while this case involves a motion to reopen. This argument fails because Wu's ability to establish a prima facie case is directly related to his ability to succeed on his asylum claim if the case is reopened. *See Alizoti*, 477 F.3d at 452. Therefore, *J-W-S-*'s holding that the very documents at issue here do not support an asylum claim supports the BIA's decision that Wu is not entitled to a reopening of his case.

Wu attempts to distinguish *Matter of S- Y- G-* based on its facts. *Matter of S- Y- G-* was decided following a remand in which the Second Circuit directed the BIA to consider the *Guo* documents. Two of the *Guo* documents (administrative decisions from Fujian Province and Changle City) relate to the case of an individual named Zheng Yu He ("He") who was a Chinese government

11

employee and Communist Party member whose wife gave birth to a second child while they were on a nine-month "family trip" to the United States. *See Matter of S- Y- G-*, 24 I. & N. Dec. at 254. The *Guo* documents show that the local governments determined that He's child would count for purposes of the family-planning regulations, and that the normal local sanctions would apply. In *Matter of S- Y- G-*, the BIA determined that these documents did not establish a well-founded fear of forced sterilization for two reasons. First, as noted above, the BIA found a 2007 State Department document concluding that evidence did not show that returning aliens were forcibly sterilized was more recent and more credible than the *Guo* documents. *Id.* at 255-56. Second, the BIA noted that He's situation was factually distinguishable from the applicant's in *S- Y- G-*, such that it was not clear that the applicant would receive the same treatment as He. *Id*. at 256. In particular, the *S- Y- G-* applicant was not a government employee or communist party member and had been living in the United States for a long period of time. *Id*. In addition, the BIA noted that the applicant's second child had been born seven years after his first, while He's second child had been born after an interval of five-and-a-half years. *Id*. The BIA found this distinction relevant because longer intervals between births are generally looked upon more favorably under family-planning regulations in China. *Id.*

Wu claims that *Matter of S- Y- G-* is distinguishable from his case because his children were born only two-and-a-half years apart, making him even more likely than He to face forced sterilization. However, Wu, like the applicant in *S- Y- G-*, was not a government employee, not a communist-party member, and not merely on a short stay in the United States. These facts all

suggest, as they did in *Matter of S- Y- G-*, that the *Guo* administrative decisions would not necessarily apply to Wu. The fact that Wu's children were born closer together in time than He's does not compel a finding that the *Guo* documents would apply to Wu.

3.      *Wu has not put forth evidence that he would be economically coerced to undergo sterilization*

Wu also argues that he could be compelled to undergo sterilization by virtue of economic penalties. However, Wu has not pointed to evidence that would compel this Court to disagree with the BIA's conclusion, in reliance on *Matter of J- W- S-*, that the fines facing returning aliens with American-born children do not rise to the level of persecution. (App. 3.) Wu cites a sentence in the 2006 State Department report stating that some couples violating the child-birth rules were assessed fines "which sometimes reached 10 times a person's annual disposable income." (App. 79.) Wu also points to a document from the INS's Resource Information Center, stating "[f]ines can equal several years' wages for an average worker." (App. 604). While fines of this magnitude might effectively coerce a person in Wu's position to agree to be sterilized, *see Xiu Zhen Lin*, 532 F.3d at 598 (remanding for BIA to consider whether fines facing returning Chinese would effectively force them to submit to sterilization), Wu has cited no evidence of the frequency with which such large fines are actually assessed, nor has he pointed to evidence (or even alleged) that he lacks the means to pay a large fine. Therefore, the BIA did not abuse its discretion in rejecting Wu's unsupported arguments that he will face a fine so large that he will effectively be forced to undergo sterilization.

4.      *The brevity of the BIA's opinion does not require a remand*

Wu argues that the BIA's opinion does not show that it actually considered the *Guo*

documents and applied them to Wu's case. Wu cites no Sixth Circuit case law in support of his argument. In a case with similar facts cited by the Government, *Wang v. BIA*, 437 F.3d 270, 272-73 (2d Cir. 2006), the Second Circuit rejected this type of argument. In *Wang*, a Chinese national sought to reopen his asylum claim based on changed country conditions, asserting that he faced sterilization upon return to China as a result of having two children while living in the United States. *Id*. at 273. The BIA issued a terse decision denying the motion. *Id.* at 275. On review, the Second Circuit reasoned that, on the one hand, "the BIA abuses its discretion if it fails completely to address evidence of changed country conditions offered by a petitioner . . . [;] [t]he BIA should demonstrate that it has considered such evidence, even if only to dismiss it." *Id*. (citations omitted). On the other hand, the BIA is not required to parse or refute on the record every individual argument or document offered by the petitioner, and "[t]his is particularly true for evidence . . . which the BIA is asked to consider time and again." *Id*. We find this reasoning convincing as applied to Wu's case.

Wu cites a Second Circuit case reaching a seemingly opposite conclusion. *See Zhi Yun Gao v. Mukasey*, 508 F.3d 86, 87-88 (2d Cir. 2007) (remanding because the BIA failed to show that it had given meaningful consideration to the petitioner's documents). However, as noted above, we have no doubt that the BIA would decide this matter the same way if the Court remanded and directed it to expand its reasoning; therefore, remanding the case would be futile. *See Yang Lin*, 320 F. App'x at 437.

We have considered Wu's other arguments and find them to be without merit.

## III.  CONCLUSION

For the foregoing reasons, we **DENY** Wu's petition for review and **AFFIRM** the decision

of the BIA.