NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0119n.06
Filed: February 12, 2009

No. 06-4395

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VITOR MERNACAJ, DRITA MERNACAJ, ROMINA MERNACAJ, and ROMIO MERNACAJ, | ) ) ) ) | |
| Petitioners, | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) ) | |
| Respondent. | ) | |

Before: DAUGHTREY, GILMAN, and COOK, Circuit Judges.

**PER CURIAM.** Petitioner Vitor Mernacaj[1] is an Albanian national who entered the United States at an unknown entry point and without inspection on December 3, 1999, and filed a timely asylum application in February of the following year. That application was denied both initially and after an evidentiary hearing before an immigration judge. Mernacaj now appeals the decision of the Board of Immigration Appeals (the BIA) adopting the immigration judge's decision to deny the petitioner's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (the CAT). Our

---

[1]Vitor Mernacaj's wife, Drita Mernacaj, and their two children, Romina and Romio, entered the United States using fraudulent documents on January 22, 2001. Their petition for asylum is derivative of Vitor's.

review of the record indicates that there is substantial evidence to support the immigration judge's decision, which was based on a determination that country conditions in Albania have changed to such an extent that the petitioner has not established – and, indeed, cannot establish – a well-founded fear of future persecution. We therefore decline to overturn the order of the BIA.

In seeking asylum in the United States, Vitor Mernacaj claimed that he had been repeatedly subjected to official persecution in Albania because of his political beliefs. According to his asylum application, the petitioner and his family suffered severe persecution by the Communist party, including the execution of his grandfather, internment of his family in a camp, and the petitioner's expulsion from high school. At his merits hearing, he testified that he was a member of two anti-Communist organizations – the Association of Former Politically Persecuted Persons in Albania and the "13 December" organization – but that he was not a member of the Democratic party or, apparently, any other political party. Mernacaj also testified about five specific incidents that he contends constituted persecution and establish his well-founded fear of future persecution.

The first incident, he claimed, occurred in December 1990 when he took part in a large demonstration to overthrow the Communist regime in Albania, was arrested by the state security forces for "distributing propaganda to overthrow the system in power," and was detained for two days, during which time he was beaten and told to stop his activity. The second incident, in April 1991, also involved a political demonstration, this one

protesting elections held the month before that were allegedly manipulated. He said that he was arrested by the security forces for participation in the demonstration, held for three days and nights, along with others, in a large fuel tank of some sort, and suffered a broken leg from being kicked by one of his captors. After the Communist Party fell, the petitioner apparently had no further problems until the Socialists gained control in 1997 and, he claimed,"started a new class struggle against the people that were persecuted and for one word against the Government of Socialist Party [sic] they arrested and threatened people." Thus, according to Mernacaj, the next three incidents of persecution, which all occurred after 1997, were also tied to his pro-democratic beliefs.

The first of these incidents followed an August 1998 demonstration protesting the arrest of six Democratic leaders by the Socialist government, when the petitioner allegedly was arrested, detained overnight, and threatened by masked people who came up to him and said, "[T]here is going to come a day when we're going to kill you." He also testified that in June 1999, he was working a construction job when masked men detained him on behalf of the government and kept him captive for 14 hours, beating him on the back and ordering him to stop his political activities. The final incident occurred in August 1999, when three men allegedly attacked the petitioner while he was standing at a bus stop and beat him up because he was "a person who is trying to overthrow the system in power and that's what you deserve." Mernacaj claimed to have been hospitalized for five or six days as a result of this incident.

The petitioner submitted a number of documents in support of his claim for asylum, including country condition reports, membership certificates from "13 December" and the Association of Former Politically Persecuted Persons, and a document indicating that he was treated at a hospital on August 20, 1999, but not detailing what the treatment was for. The petitioner's wife, Drita, also testified, corroborating her husband's leg injury and hospitalization in April 1991 and confirming that he came home with bruises on his body on August 20, 1999. Drita did not elaborate on the petitioner's political associations or activities.

In denying relief, the immigration judge indicated, first, that the detentions described as occurring after political demonstrations in 1990, 1991, and 1998, did not constitute political persecution. We agree. *See Ceraj v. Mukasey*, 511 F.3d 583 (6th Cir. 2007) ("mass roundup of demonstrators in 1991 and 1997 does not amount to past persecution') (citing *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (holding that an Albanian citizen jailed after participation in two demonstrations and subjected to physical injury after a third demonstration did not demonstrate that he had been persecuted)). In addition, the judge did not find credible the petitioner's proof regarding the last two incidents – those in June and August 1999. The judge also noted that even if all five incidents had occurred just as the petitioner testified, there was no credible proof that the cause was his political beliefs, citing the fact that Mernacaj did not claim to belong to any political party in Albania and offered no explanation of who was responsible for taking action against him.

- 4 -

Finally and most significantly, the immigration judge held that regardless of any past persecution as alleged by the petitioner, he could not establish eligibility for asylum because country conditions had changed in Albania to such an extent that he could not demonstrate a basis for a well-founded fear of future persecution. The judge noted specifically that "a perusal of the documentary evidence of record with respect to what's going on today and in the recent past in Albania demonstrates that there is no pattern or practice of persecution of a group of persons similarly situated to the respondent." On the same basis, the immigration judge denied the petitioner's request for withholding of removal, and he rejected the CAT claim because the petitioner had not demonstrated that he had been tortured in the past or that he would be in the future, especially given the changed country conditions.

The BIA affirmed, also resting its decision on changed country conditions. Based on our review of the same record, we conclude that substantial evidence supports the immigration judge's ruling. That evidence establishes that, at the time of the merits hearing, there had been a fundamental change in circumstances in Albania since the time of the petitioner's last alleged persecution; that the previously volatile situation between the two main parties in Albania, the Socialist party and the Democratic party, had improved; and that a member of the Democratic party was then serving as prime minister, one of the two main offices in the governmental system. Documents in the record, most notably a May 2001 State Department "Profile of Asylum Claims and Country Conditions" for Albania, reflect that although many asylum applicants had claimed that the Socialist party was in

actuality "a reconstituted communist regime," "claims relying on this premise are contradicted by virtually all state actions, and those who truly were persecuted by the communist[s] often resent this comparison." Moreover, the 2004 Profile indicates that "there have been no major outbreaks of political violence since 1998, and the available evidence suggests that neither the government nor major political parties engage in policies of abuse or coercion against their political opponents."

On appeal, the petitioner's principal complaints center on the immigration judge's credibility findings. However, credibility determinations that focus on past history are not dispositive in this case. Significantly, the petitioner has offered no argument and pointed to nothing in the record that refutes the finding of changed country conditions, let alone something in the record that compels conclusions contrary to those reached by the immigration judge on the basis of the country reports. In fact, some of the documents the immigration judge relied upon in making findings were offered by the petitioner himself. As we noted in *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004), although in certain circumstances State Department reports may be problematic sources upon which to rely, when the petitioner offers at least one of the reports and offers no contrary documentation, reliance on country reports is supportable. Indeed, we have found that these reports "are generally the best source of information on conditions in foreign nations." *Id.*

In short, the petitioner has shown neither a basis for "actual[ ] fear that he will be persecuted upon return to his country" nor "evidence establishing an 'objective situation'

under which his fear c[ould] be deemed reasonable." *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994); *see also Daneshvar v. Ashcroft*, 355 F.3d 615, 623-24 (6th Cir. 2004). It follows that the immigration judge did not err in denying Mernacaj's application for asylum.

There is also no merit in the petitioner's contention that the immigration judge used "the wrong legal test" for assessing his asylum claim and that the immigration judge failed to give "the appropriate weight to Petitioner's documents," in part because he "failed to address in his Oral Decision, all of the exhibits in the record." The petitioner has failed to provide any reasoned argumentation or citation in support of these contentions. Moreover, a review of the record indicates that neither contention has merit. The immigration judge adequately set out the relevant law regarding asylum and correctly applied it to the facts of the petitioner's case. With regard to the documents, a review of the record does not indicate that inordinate weight was given to one document over another – and certainly not over a particular document offered by the petitioner. The immigration judge referenced a number of the documents in the record in his oral decision and there is, of course, no requirement that the immigration judge refer to all documents in the record when rendering a decision.

With regard to his withholding of removal and CAT claims, the petitioner argues that the immigration judge used the wrong legal test and that he did not "fully analyz[e]" the claims because the judge failed to make "specific findings" or "embark in a full discussion of the testimony or the evidence." Contrary to these assertions, it is clear from the record

that the immigration judge discussed the correct standards for withholding of removal and relief under the CAT and applied the law to the facts of this case, holding that the lack of a well-founded fear of persecution barred withholding and that nothing in the record indicated that it was more likely than not that the petitioner would be tortured if returned to Albania. As we noted in *Yu v. Ashcroft*, if a petitioner "does not establish eligibility for asylum, he does not meet the more stringent standards required for withholding or the Torture Convention." 364 F.3d 700, 703, n.3 (6th Cir. 2004). We conclude that the immigration judge's findings with regard to withholding and the CAT are supported by substantial evidence.

We have recently held, repeatedly, that "conditions in Albania have improved to such an extent that there is no objective basis for a well-founded fear of future persecution based on political or religious beliefs," *Ceraj*, 511 F.3d at 593, given a mounting stack of country reports and profiles supplied by the State Department and various NGOs such as Amnesty International. *See also Ramaj v. Gonzales*, 466 F.3d 520, 530-31 (6th Cir. 2006), *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2005). Certainly, there is nothing in this record to indicate otherwise. For this reason, we DENY the petition for review.