**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0787n.06

No. 09-4058

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 22, 2010**

LEONARD GREEN, Clerk

PIUS DANIEL LULONGA,                      )
                                          )
      **Petitioner,**                       )        **ON PETITION** FOR REVIEW
                                          )        OF AN ORDER OF THE
v.                                        )        BOARD OF IMMIGRATION
                                          )        APPEALS
ERIC H. HOLDER, JR., Attorney             )
General of the United States,             )
                                          )        **O P I N I O N**
      **Respondent.**                       )
_____ )

Before:  **MOORE, SUTTON, and FRIEDMAN,**[*] **Circuit Judges.**

    **KAREN NELSON MOORE, Circuit Judge.**  Petitioner Pius Daniel Lulonga ("Lulonga")

seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming without opinion

the Immigration Judge's ("IJ") denial of his request for withholding of removal and protection under

the Convention Against Torture ("CAT").  In his petition for review, Lulonga argues that the IJ erred

in (1) concluding that Lulonga was not credible; (2) requiring corroborating evidence without giving

Lulonga notice that he must provide such evidence; and (3) failing to find that Lulonga had suffered

from past persecution.  Upon review, we conclude that the IJ's adverse credibility determination was

supported by substantial evidence, which included Lulonga's inconsistent testimony regarding his

treatment in jail.  Lulonga did not provide sufficient additional evidence independently to support

_____

[*]The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit,
sitting by designation.

his claim. Therefore, he did not establish that it is more likely than not that his life or freedom would

be threatened in Tanzania on account of his political opinion if he were returned there. Accordingly,

Lulonga's petition for review is **DENIED**.

## I. BACKGROUND

Lulonga is a forty-four year old native and citizen of Tanzania, born in Zanzibar on the island

of Pemba. He is divorced and has no children. Lulonga claims that he was persecuted for his

political opinion in Tanzania as a result of his involvement with the Civic United Front ("CUF"),

an opposition political party. He joined CUF in 1993, regularly attended party meetings, and became

a youth leader involved in recruiting young people to the party. Lulonga testified that the police

supported the ruling party, Chama Cha Mapinduzi ("CCM"), and he submitted corroborating

documentation regarding violent attacks by CCM against supporters of CUF.

Lulonga testified that on June 5, 1999, he was part of a meeting for CUF consisting of

himself and twenty-five people. The next day, he learned that the police were looking for him

because he had held an illegal meeting. On June 7, 1999, he was arrested by the police and held in

custody for two to three months. Lulonga testified that the jail conditions were "filthy" and

unsanitary and that he was "man-handled" while in custody. Administrative Record ("A.R.") at 110

(Removal Hr'g Tr. at 21). He later testified that he was "pushed" and "beaten" when he complained

about the unsanitary conditions. A.R. at 135 (Removal Hr'g Tr. at 46).

Lulonga was ultimately charged with violently assembling in violation of the law of Zanzibar.

After he was released on bond, he was required to report periodically to the police while his case was

2

pending, and did so until leaving Tanzania in August 2000. He testified that if he failed to report, he would be jailed. He also testified that the charges are still pending against him in Tanzania and he would be taken back to prison if he returns.

Lulonga asserts that he continued his political involvement with the CUF after his arrest, and, in June 2000, attended a CUF meeting that was dispersed by the police. During the dispersal, Lulonga was beaten and injured by the police, but not arrested, and sought treatment for his injuries from a traditional doctor rather than a hospital. He testified that he did not go to a hospital because he did not have necessary documents and feared being arrested. At the hearing, he presented injuries from this incident, showing the immigration judge markings on the outside of his elbow of his left arm which he received when the police were pulling him, and a scar on top of his shoulder where he was hit by police with a baton.

Lulonga left Tanzania on August 23, 2000. He claims that he and his wife came to the United States so that his wife could obtain medical treatment here for a slipped disc. He initially testified that she became ill in August 2000; he later explained that she became ill in May 2000 but was not advised to seek treatment in the United States until July 2000, at which time they both obtained U.S. visas for this purpose.

On August 25, 2000, Lulonga arrived in the United States at Newark, New Jersey, as a nonimmigrant visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed October 23, 2000. Lulonga testified that he did not file for asylum when he arrived because he had hoped the situation in Tanzania would "settle[] down." A.R. at 121

(Removal Hr'g Tr. at 32). While in the United States, Lulonga has continued to work on behalf of the CUF by raising funds in support of the party and visited with the party leader during his visit to the United States.

Lulonga filed an application for political asylum on June 5, 2003. On December 2, 2003, the Department of Homeland Security ("DHS") initiated removal proceedings by filing a Notice to Appear ("NTA") which alleged that Lulonga was removable for having remained in the United States beyond October 23, 2000 without authorization, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B). At a December 21, 2003 hearing, Lulonga conceded removability. At a January 7, 2006 hearing, Lulonga requested relief in the form of asylum, withholding of removal, and protection under the CAT. Because Lulonga's asylum application was filed more than one year after his arrival in the United States, Lulonga conceded that he is ineligible for asylum. At his removal hearing on May 17, 2007, Lulonga testified before an immigration judge, through a Swahili translator, in support of his application for relief.

After Lulonga's testimony, the immigration judge ("IJ") entered an oral decision denying all relief except for voluntary departure. Because Lulonga was deemed ineligible for asylum, the decision addressed only his claims for withholding of removal and protection under the CAT. The IJ found Lulonga to be not credible, and stated in support of his finding that Lulonga's testimony was "clearly evasive" and "inconsistent." A.R. at 42 (Oral Decision at 6). The IJ also noted the lack of supporting documentation to corroborate Lulonga's claims. Because of the lack of corroborating evidence, the IJ concluded that, in order to find persecution, he would have to find Lulonga credible,

which he did not. Therefore, the IJ found that there was not sufficient evidence to support Lulonga's

claims for relief, and the IJ denied Lulonga's claims for withholding of removal and protection under

the CAT. Lulonga appealed the IJ's decision. On July 31, 2009, the BIA affirmed without opinion.

Lulonga timely filed a petition for review in this court.

## II. ANALYSIS

### A. Adverse Credibility Determination

When, as in this case, the BIA summarily affirms the IJ without issuing its own opinion, this

court reviews the IJ's opinion. *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005). The

decision by the IJ to deny Lulonga's request for withholding of removal and protection under the

CAT rested on his conclusion that Lulonga was not a credible witness. The testimony of the

applicant for asylum or withholding of removal may be sufficient on its own to establish past

persecution or a well-founded fear of persecution, but only if the trier of fact finds the testimony to

be credible. 8 U.S.C. § 1158(b)(1)(B)(ii); *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (noting

that testimony is sufficient to establish well-founded fear if the testimony is "believable, consistent,

and sufficiently detailed to provide a plausible and coherent account of the basis for his fear")

(internal quotation marks omitted).

"Credibility determinations are considered findings of fact and are reviewed under the

substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under the

substantial evidence standard, "findings of fact are 'conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)

(quoting 8 U.S.C. § 1252(b)(4)(B)); *see INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (requiring that the evidence "*compel*[]" an alternate conclusion in order to overturn a BIA decision); *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) ("[T]he petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution.").

Even so, adverse credibility findings "must be supported by specific reasons." *Sylla*, 388 F.3d at 926. In cases such as this one, predating the REAL ID Act,[1] an adverse credibility finding cannot be based on "an irrelevant inconsistency" but rather must be based on "issues that go to the heart of the applicant's claim." *Id.* (internal quotation marks omitted). "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* (internal quotation marks omitted).

In support of its adverse credibility finding, the IJ stated that "[f]irst, while the Respondent's testimony was relatively forthright and responsive on direct examination, on cross examination by the government attorney and when questioned by the Court regarding inconsistencies or admissions, the Respondent's answers became clearly evasive." A.R. at 42 (Oral Decision at 6). As evidence of evasiveness, the IJ stated that Lulonga "had to be asked the same question two or three times" when only a yes or no answer was required. *Id.* The IJ did not cite examples of these exchanges.

---

[1]Under the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, an altered standard of proof for an adverse credibility finding applies to cases filed on or after May 11, 2005. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); 8 U.S.C. § 1229a(c)(4)(C); *see Perlaska v. Holder*, 361 F. App'x 655, 662 n.7 (6th Cir. 2010). Because Lulonga filed his application for asylum in 2003, the pre-REAL ID Act standard applies to his case.

Second, the IJ found Lulonga's testimony to be inconsistent. The IJ identified three main inconsistencies in Lulonga's testimony in support of its finding: 1) inconsistent descriptions of his treatment in jail; 2) inconsistent dates and omission of evidence with respect to his wife's illness; and 3) his inability to testify to the meaning of the initials of his political party.

Although several discrepancies identified by the immigration judge do not go to the heart of Lulonga's claim, we cannot conclude that any reasonable adjudicator would be compelled to find that Lulonga is credible. *See Perlaska v. Holder*, 361 F. App'x 655, 662–63 (6th Cir. 2010) (court not compelled to find petitioner credible even though not all discrepancies substantial); *Vasha v. Gonzales*, 410 F.3d 863, 870–72 (6th Cir. 2005) (some inconsistencies unsupported by the record, but other inconsistencies, when taken together, supported adverse credibility finding); *Singh v. Ashcroft*, 398 F.3d 396, 402 (6th Cir. 2005) ("several of the grounds upon which the IJ relied are somewhat questionable" but two key inconsistencies supported adverse credibility finding). The most significant discrepancy identified by the IJ is Lulonga's inconsistent testimony regarding treatment by prison officials following his June 1999 arrest. We cannot conclude that any reasonable factfinder would be compelled to find Lulonga credible in light of his inconsistent testimony regarding his treatment in jail. Lulonga's conflicting statements regarding his prison beatings are inconsistencies that go to the heart of his claim and enhance his claim for persecution. *See Sylla*, 388 F.3d at 926.

Lulonga did not testify on direct examination to being beaten while in custody. On cross examination, when the government attorney asked if he was beaten during his detention, Lulonga

responded, "When I complained about the smell and the deposit for the relief to be disposed of, I would be pushed and pushed around." A.R. at 135 (Removal Hr'g Tr. at 46). The judge then asked, "The question, sir, was were you beaten while you were in jail?" to which Lulonga responded, "Yes, they would use their batons and they would beat me." *Id.* Later, when the judge questioned him again about his time in prison, Lulonga claimed he was beaten seven times because he complained about the unsanitary conditions. There is no mention in his asylum application of being beaten by the police while in custody.

These inconsistencies could be "attempts by the applicant to enhance his claims of persecution." *Sylla*, 388 F.3d at 926. Lulonga argues that his failure earlier to mention being "beaten" while in jail and his inconsistent terminology regarding his treatment could be attributed to language difficulties.[2] However, the progression of his testimony instead could be viewed as embellishment, giving rise to a finding that Lulonga is not credible. *See Yong Zhang Zhu v. Mukasey*, 299 F. App'x 541, 546 (6th Cir. 2008) (unpublished opinion) (concluding that omissions in application and supporting documents support IJ's finding that petitioner "embellished the incidents in order to support his claim of persecution"). These inconsistencies are significant

---

[2]Lulonga notes that it is possible that his phrasing in the hearing transcript is "disjointed and ungrammatical . . . . because the interpreter was not fully fluent in English." Pet'r Br. at 9–10. To the extent that this can be construed as a due-process challenge to the translation, his claim is foreclosed because he did not present a due-process argument in his BIA appeal. This court "consider[s] waived" claims that have not been raised and administratively exhausted below. *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *see* 8 U.S.C. § 1252(d)(1).

because the circumstances of Lulonga's detention and his treatment in prison constitute the crux of his claim of past persecution.

Lulonga also argues that he "is entitled to know what weight (if any) the IJ gave [the] physical evidence" he presented to support his claim that he was beaten in June 2000 when police forcibly broke up a CUF meeting. Pet'r Br. at 10. First, whatever weight could be given to this evidence, the IJ provided "specific reasons" in support of its adverse credibility finding and its decision is supported by substantial evidence. *See Sylla*, 388 F.3d at 926; *see also Mernacaj v. Holder*, 310 F. App'x 800, 804 (6th Cir. 2009) (unpublished opinion) ("[T]here is, of course, no requirement that the immigration judge refer to all documents in the record when rendering a decision."). "[R]e-weighing the evidence is not part of this Court's role under the substantial-evidence standard." *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009). Second, although Lulonga could have argued that the IJ violated his due-process rights by failing to address this evidence, he did not raise this claim to the BIA. *See Barry v. Holder*, No. 08-4697, 2010 WL 3292989, at *7 (6th Cir. Aug. 23, 2010) (noting that petitioner could have argued that IJ violated due-process rights by not addressing evidence, but failed to raise the argument). This court "consider[s] waived" issues that have not been raised and administratively exhausted below. *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *see* 8 U.S.C. § 1252(d)(1).

Although we conclude that Lulonga's inconsistent testimony about being beaten in jail constitutes substantial evidence supporting the IJ's adverse credibility finding, we note that other inconsistencies identified by the IJ do not provide such support. In particular, the IJ noted minor

inconsistencies in Lulonga's testimony regarding when his wife became ill in relation to his application for a visa and his ultimate departure for the United States. Lulonga left Tanzania in August of 2000 and testified that he came to the United States so his wife could be treated here for a serious illness. When the IJ asked whether it was his testimony that his wife became ill in August of 2000, which is when he came to the United States, Lulonga responded affirmatively. When the IJ inquired why he had obtained a visa in July of 2000 if his wife became sick in August, Lulonga explained that his wife actually fell ill in May of 2000 and was taken to a hospital at that time. In July, the doctors could no longer treat her and advised that she be brought to the United States to seek further treatment.

Minor inconsistencies in dates "which reveal nothing about [Lulonga's] fear for his safety" do not involve issues that go to the heart of the claim and, thus, "would be an inadequate basis for an adverse credibility finding." *Yu*, 364 F.3d at 704. The exact date on which Lulonga applied for asylum and the onset of his wife's illness are of little relevance to his claim of persecution. Furthermore, the minor inconsistencies in his testimony on this point do not enhance his claims. Therefore, the date of onset of Lulonga's wife's illness is insufficient to support an adverse credibility determination.

The IJ also noted that Lulonga did not provide any supporting documentation to corroborate his wife's illness. Lulonga argues that the IJ should not have based "his negative credibility assessment on this lack of corroboration without putting Lulonga on notice that he should produce his wife's [readily available] medical records." Pet'r Br. at 18. However, the IJ did not rely on the

absence of such evidence. As discussed *supra*, other substantial evidence supports the IJ's adverse credibility finding. Therefore, we need not decide whether the IJ properly required such corroboration.

## B. Past Persecution

Given the limited evidence that Lulonga presented in support of his claim for withholding of removal or protection under the CAT, Lulonga's credibility was critical to finding past persecution or well-founded fear of persecution. "Withholding of removal is required if an alien can demonstrate that 'his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Vasha*, 410 F.3d at 875 (quoting 8 C.F.R. § 1208.16(b)). In order to qualify for withholding of removal, Lulonga "must establish that there is a clear probability that he will be subject to persecution if forced to return to [Tanzania]." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). To establish a clear probability, Lulonga "must demonstrate that 'it is more likely than not' that he . . . will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). "If an alien can establish that he has been subject to past persecution, there is a presumption, subject to rebuttal by the Government, that his 'life or freedom would be threatened in the future' in the country of removal." *Gjyzi v. Ashcroft*, 386 F.3d 710, 715 (6th Cir. 2004). To establish eligibility for protection under the Convention Against Torture, Lulonga must show that "it is more likely than not that [he] would be tortured if removed to [Tanzania]." *Liti*, 411 F.3d at 641 (quoting 8 C.F.R. § 1208.16(c)(2)).

11

In order to reverse the IJ's denial of relief, there must be other evidence in the record beyond Lulonga's testimony that would compel this court to conclude that Lulonga would be more likely than not to suffer persecution or torture upon his removal to Tanzania. Lulonga did not meet this burden. Because the IJ concluded that Lulonga's claim of past persecution depended upon the credibility of his testimony, and because the IJ did not find Lulonga credible, the IJ determined that Lulonga had "not demonstrated that it is more likely than not that his life or freedom would be threatened . . . on account of his political opinion were he returned to" Tanzania. A.R. at 45 (Oral Decision at 9).[3] The IJ reached the same conclusion regarding evidence of torture.

We agree that the record does not compel the conclusion that Lulonga is more likely than not to suffer persecution or torture if returned to Tanzania. Lulonga provided documentary evidence in the form of U.S. State Department reports and Amnesty International reports documenting that, at the time he departed from Tanzania, members of opposition parties were targeted by the government. However, he did not prove that "*he* will be singled out for persecution." *Akhtar v. Gonzales*, 406

---

[3]The IJ found that there is "no documentation to support the Respondent's claim as to the duration of his detention in 1999" or that "he had in fact been detained at all" and noted discrepancies in Lulonga's testimony regarding the length of his detention. A.R. at 44–45 (Oral Decision at 8–9). We note that Lulonga did submit as corroborating evidence a warrant charging him with having "violently assembled contrary to law of Zanzibar," dated June 6, 1999, a form from the Tanzanian police charging him with the same, dated June 7, 1999, and a form titled "Bond and Bail Bond after Arrest under a Warrant," dated August 2, 1999, setting a hearing date on the same charge. A.R. at 267–69. These documents support Lulonga's claim that he was arrested, charged, and possibly detained. However, Lulonga's claims that his political activity gave rise to his charge and arrest, that he was detained for two to three months, and that he was beaten while detained all depend upon the credibility of his testimony.

F.3d 399, 405 (6th Cir. 2005). Therefore, we conclude that the evidence is not sufficient to compel reversal.

### III. CONCLUSION

The discrepancies surrounding his treatment in jail go to the heart of Lulonga's claim that he faced persecution for his political opinion. Therefore, we cannot conclude that any reasonable adjudicator would be compelled to find Lulonga credible or that he has established past persecution. *See Berri v. Gonzales*, 468 F.3d 390, 395–96 (6th Cir. 2006) ("[G]iven the number of inconsistencies and the lack of corroborating evidence . . . , the IJ's credibility determination was a reasonable one."); *Yu*, 364 F.3d at 704 ("Although some of the IJ's grounds seem weak when the discrepancies are viewed in the context of the surrounding record, we cannot say that a 'reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B)). Accordingly, we **DENY** Lulonga's petition for review.