**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0200n.06**

**No. 16-3279**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 04, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TONY ARIAS-HERNANDEZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFF B. SESSIONS, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Tony Arias-Hernandez, a Honduran citizen, seeks review of a Board of Immigration Appeals (the Board) decision denying his application for withholding of removal. Because Arias-Hernandez did not establish that he was eligible for such relief, and because his hearing before the immigration judge was otherwise consistent with due process, we deny his petition.

I.

Tony Arias-Hernandez is a native and citizen of Honduras. He entered the United States without inspection on August 5, 2007. On October 11, 2012, the Department of Homeland Security (DHS) served Arias-Hernandez with a Notice to Appear. DHS charged Arias-Hernandez with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for being an alien present in the United States without being admitted or paroled.

Arias-Hernandez filed an I-589 application on February 6, 2013, seeking withholding of removal[1] based on his membership in a particular social group, namely, his family. A hearing was held before an immigration judge on April 15, 2013, during which Arias-Hernandez testified and elaborated on many of the statements contained in his I-589. His I-589 and the April 15 hearing provided the following facts. Arias-Hernandez and his family became involved in a "blood feud" in Honduras when his uncle Arturo murdered a member of the Flores family in La Lucha, Honduras, in November 2000. As a result of the murder, "members of the Flores family would always try to go after" Arias-Hernandez and his family, and eventually a Flores family member, Olman, murdered Arturo. AR at 312. The police investigated Arturo's death, but were unable to arrest the perpetrator.

Sometime following Arturo's death, Arias-Hernandez was allegedly attacked by Olman in La Lucha. This attack was purportedly thwarted when a young woman intervened. Although the assailant was armed with a machete, Arias-Hernandez escaped unhurt.

Following this attack, Arias-Hernandez moved to El Zapote, Honduras. Arias-Hernandez stated that he and his family were "safe in El Zapote," but that his uncle Nelson, who remained in La Lucha, was allegedly attacked by the Flores family, receiving several cuts but ultimately surviving. AR at 312. After living in El Zapote for approximately six years without incident, Arias-Hernandez was again attacked by the Flores family when he returned to La Lucha in 2007 to visit family and friends. During this attack, several members of the Flores family held Arias-Hernandez down and beat him with a machete. He was able to escape with only minor wounds when bystanders intervened. Arias-Hernandez claims that he reported both this incident and the earlier attack by Olman to the police, but that "they didn't pay attention." AR at 164. Following

---

[1] Arias-Hernandez also sought asylum in his I-589 application but does not assert that ground for relief on appeal.

the 2007 attack, Arias-Hernandez left Honduras. He testified that he is afraid to return because the "Flores family will torture or kill [him]." AR at 313.

In addition to his testimony at the April 15 hearing, Arias-Hernandez submitted several pieces of documentary evidence into the record. First, he submitted six affidavits from friends and family living in La Lucha that explained, in varying levels of detail, the feud between Arias-Hernandez's family and the Floreses. Second, he provided death certificates for his mother, father, and Arturo, although the causes of death were not listed. Third, he submitted a 2008 U.S. Department of State Crime and Safety Report on Honduras, a 2011 U.S. Department of State report on human rights in Honduras, and various news articles discussing general crime in Honduras.

The immigration judge ("IJ") issued an oral decision on May 30, 2014, denying Arias-Hernandez's application for withholding of removal. As an initial matter, the IJ found Arias-Hernandez to be an incredible witness based on his testimony that was not only internally inconsistent, but also inconsistent with his I-589 application. As relevant here, the IJ noted that Arias-Hernandez had given inconsistent testimony concerning dates for a number of events that were critical to his withholding-of-removal claim. For example, he had originally stated, in both his testimony and his I-589, that Arturo killed the Flores family member in November 2001, but later changed that date to November 2000 after cross-examination. Likewise, although originally testifying that Arturo was murdered in March 2002, Arias-Hernandez later conceded, after being presented with Arturo's death certificate, that the murder had occurred on August 7, 2001. Finally, when asked when he was attacked by Olman, Arias-Hernandez provided five different dates between his hearing testimony and his I-589: (1) "shortly after [Arturo] had killed the Flores man," which occurred in 2000; (2) August 2001, "a few days after they killed [Arturo]";

3

(3) September 2001, a month after Arturo was killed; (4) February 2002; and (5) March 2002. AR at 102, 151, 171–72, 312.

Next, the IJ found that Arias-Hernandez had failed to present sufficient corroborative evidence to rehabilitate his discredited testimony or independently satisfy his burden of proving eligibility for withholding of removal. The IJ concluded that, given the "remarkabl[e] similar[ity] in both content and wording," in addition to their misspelling of Arias-Hernandez's middle name, the affidavits in the record were entitled to little evidentiary weight. AR at 104. Likewise, the IJ noted that Arias-Hernandez had failed to provide an affidavit from his uncle Nelson confirming Nelson's attack at the hands of the Flores family. Finally, the IJ found that Arias-Hernandez had not sufficiently explained the absence of any police reports detailing the attacks against him.

Alternatively, the IJ held that, even if Arias-Hernandez was found to be credible, he still had not established his eligibility for withholding of removal because he had not shown "past persecution" or a "well-founded fear of future persecution," nor had he shown that the Honduran government was "unwilling or unable to control" the Flores family. AR at 104–09. The IJ also concluded that Arias-Hernandez could reasonably relocate within Honduras without fear of future harm.

Arias-Hernandez appealed to the Board, arguing that the IJ had deprived him of a full and fair hearing in violation of due process because of his "frequent and irrelevant interruptions." AR at 31–35. The Board affirmed. It first found that the IJ's adverse-credibility determination was not clearly erroneous because it was based on "specific and cogent reasons, including omissions and inconsistencies within the respondent's testimony and when compared to the

4

documentary evidence."[2] AR at 4. The Board also agreed that Arias-Hernandez had failed to "present sufficient corroborative evidence to rehabilitate his discredited testimony or independently satisfy his burden of proof." *Id.* Accordingly, the Board found that Arias-Hernandez had not satisfied his burden of showing eligibility for withholding of removal. Finally, the Board held that Arias-Hernandez's immigration hearing was consistent with due process. Arias-Hernandez filed a timely petition for review.

## II.

Where the Board reviews an immigration judge's decision and issues a separate opinion, we treat it as the final agency determination. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015) (citations omitted). To the extent the Board adopted the immigration judge's reasoning, however, "this court also reviews the immigration judge's decision." *Id.* at 692. Questions of law are reviewed *de novo*, while factual findings are reviewed under the substantial evidence standard. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005). Under this latter standard, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

To qualify for withholding of removal, Arias-Hernandez must show that it is more likely than not that he will be persecuted upon his return to Honduras "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting 8 U.S.C. § 1231(b)(3)(A)); *Marouf*, 811 F.3d at 179. This may be shown in two ways. If Arias-Hernandez can show past persecution on

---

[2] Although Arias-Hernandez failed to challenge the IJ's adverse-credibility determination in his brief before the Board, the Board nonetheless reviewed this determination. Accordingly, we also review the adverse-credibility finding, and do so under the substantial-evidence standard.

account of a protected ground, there is a presumption that his "life or freedom [will] be threatened in the future." 8 C.F.R. § 208.16(b)(1)(i). Without showing past persecution, he can succeed by showing that, because of a protected ground, it is more likely than not that his life or freedom will be threatened upon return. *Id.* § 208.16(b)(2). Both avenues of relief are precluded, however, if he can avoid persecution by reasonably relocating to another part of Honduras. *Id.* § 208.16(b)(1)(i)(B), (b)(2); *see Melchor-Reyes v. Lynch*, 645 F. App'x 381, 384 (6th Cir. 2016). Because the Board's adverse-credibility determination is supported by substantial evidence and Arias-Hernandez cannot otherwise show he was entitled to withholding of removal, we affirm the Board's decision denying such relief.

A.

The testimony of an applicant may alone be sufficient to establish eligibility for withholding of removal, "but only if the trier of fact finds the testimony to be credible." *Lulonga v. Holder*, 410 F. App'x 897, 899 (6th Cir. 2010) (citation omitted); *see also* 8 U.S.C. § 1229a(c)(4)(B). Credibility determinations are findings of fact reviewed under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Although "an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Chagnaa v. Holder*, 430 F. App'x 508, 511 (6th Cir. 2011) (citation omitted). Because Arias-Hernandez filed his application for withholding of removal in February 2013, he is subject to the more stringent standards of the REAL ID Act of 2005. *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006). Under this Act, credibility determinations are made by considering the "totality of the circumstances," and may be based on any inconsistency or inaccuracy, regardless of whether the inconsistency goes to the heart of the applicant's claim. 8 U.S.C. § 1229a(c)(4)(C).

The Board relied on two inconsistencies in Arias-Hernandez's testimony in affirming the IJ's adverse-credibility finding. First, the Board observed that Arias-Hernandez had given inconsistent dates for when Arturo was killed by the Flores family member and only corrected his testimony after being shown Arturo's death certificate. Second, the Board noted that Arias-Hernandez had provided at least five different dates for when he was first attacked by Olman following Arturo's death. These inconsistencies are evident from the record and, under the REAL ID Act, they are sufficient to support an adverse-credibility finding. *See* 8 U.S.C. § 1229a(c)(4)(C) (emphasis added); *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). Accordingly, the Board's adverse-credibility determination is supported by substantial evidence. *See El-Moussa*, 569 F.3d at 255–56 (noting that an "adverse credibility determination . . . is conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary" (citation omitted)).[3]

B.

The Board also properly held that Arias-Hernandez had not presented "sufficient corroborative evidence to rehabilitate his discredited testimony or independently satisfy his burden of proof." AR at 4–5. As an initial matter, Arias-Hernandez failed to present reasonably available corroborative evidence to support his claims. "Regardless of whether an applicant is credible or not credible, if it is 'reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided.'" *Ali v. Holder*, 534 F. App'x 286, 291 (6th Cir. 2013) (quoting *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004)). "The absence of such corroborating evidence can lead to a finding that an

---

[3] Although Arias-Hernandez proffers several excuses for his inconsistent testimony on appeal—e.g., "confusion," the passage of time—these arguments were not presented to the Board and are thus waived. *See Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005) (noting that an issue is "waived if it is not argued in the brief filed with the [Board]"). Moreover, "a plausible explanation for an inconsistency, standing alone, is not enough for [this court] to reverse an IJ's adverse-credibility determination." *Ali*, 534 F. App'x at 291.

applicant has failed to meet [his] burden of proof." *Id.* The Board's determination as to the availability of corroborating evidence should not be reversed unless a "reasonable trier of fact [would be] compelled to conclude that such corroborating evidence is unavailable." *Id.* at 292.

As the Board noted, Arias-Hernandez failed to present "evidence to establish that any written police reports he allegedly made in Honduras were lost or destroyed in a flood." AR at 5. When questioned why he had not submitted these police reports into the record, Arias-Hernandez testified that they were lost when the "whole municipality of Marcovia was flooded." AR at 164–66. When asked why he did not obtain a police statement indicating this fact, he replied that he had "asked them for [a] letter," but that "[t]hey never gave [him] the letter." *Id.* at 166. As the Board found, however, Arias-Hernandez did not provide any corroborative evidence that these reports were actually lost in a flood, much less that this flood had even occurred. And he offered no explanation as to why he could not have submitted news articles or other documentary evidence confirming the existence of this flood, or otherwise attesting to the fact that he had filed these reports. *See Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2007) (noting that the petitioner failed to provide affidavits, newspaper articles, or a reasonable explanation for the absence of such corroborating evidence), *superseded by statute on other grounds as stated in Marikasi v. Lynch*, 840 F.3d 281 (6th Cir. 2016). Because Arias-Hernandez failed to adequately explain why this corroborating evidence was unavailable, the Board reasonably relied on the absence of this evidence in making its determination. *See Ali*, 534 F. App'x at 292.

Likewise, Arias-Hernandez provided no evidence that his uncle Nelson was also attacked by the Flores family. Despite allegedly obtaining affidavits from six other friends and family members, Arias-Hernandez did not submit one from Nelson, nor did he explain why he failed to do so. Because it is reasonable to assume, absent an explanation to the contrary, that Arias-

8

Hernandez could have procured an affidavit from Nelson verifying the alleged attack, the Board reasonably considered Arias-Hernandez's failure to provide such corroborative evidence in denying relief. *See Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004) (finding that even though "contact may not have been convenient, regular, or private, it was sufficient to have allowed Petitioner to obtain a previous letter from her mother in which her mother documented her own mistreatment"); *Ali*, 534 F. App'x at 292–93 (finding that petitioner could have reasonably obtained affidavits from friends and family when there was evidence in the record that he "kept in contact" with them).

As to the corroborative evidence actually submitted, the Board correctly held that it was insufficient to independently satisfy Arias-Hernandez's burden of proof. Specifically, the Board properly found that the six affidavits in the record were of questionable authenticity because they contained statements that "were remarkably similar in both content and wording." AR at 4–5. For example, two of the affidavits provided the exact same statement regarding Arias-Hernandez:

> [T]here are always bad people around him that killed his uncle in the year two thousand one (2001), as this memory will always be with him, they arranged to take the life of the young man Tony Leonel Arias Hernandez, but because he was young when he was persecuted he looked for refuge and the help of the auxiliary of the community, but for this reason he had to emigrate to that country to search for help, leaving his grandmother, a very old person, but she had to accept that he left for the salvation of her grandson, because they continually followed him to kill him, he had to leave on August 1, 2007.

AR at 210, 212. Given the duplicative language in both affidavits, the Board's determination that they had questionable authenticity and should be afforded little weight is supported by substantial evidence. And because these two affidavits were of questionable authenticity, it was also appropriate to doubt the legitimacy of the remaining four affidavits under the doctrine of

*falsus in uno, falsus in omnibus*—false in one, false in all.  *Cf. Masiko v. Holder*, 562 F. App'x 469, 473 (6th Cir. 2014).

Moreover, even if the Board had taken the affidavits at face value, *see Jin Chen v. Holder*, 417 F. App'x 525, 528 (6th Cir. 2011), they still fail to mention that Arias-Hernandez had witnessed Arturo's murder, that Arias-Hernandez had been attacked by Olman, or that Nelson had been attacked by the Flores family.  Excluding Arias-Hernandez's incredible testimony, therefore, the record is devoid of any credible evidence that these events actually occurred.  And, although the State Department reports describe general societal violence existing in Honduras, that is insufficient to qualify for withholding of removal.  *See Mendez-Coronado v. Holder*, 374 F. App'x 601, 605 (6th Cir. 2010).

Given Arias-Hernandez's incredible testimony, as well as the dearth of corroborative evidence in the record, he cannot meet his burden of establishing eligibility for withholding of removal.  *See El-Moussa*, 569 F.3d at 257.  Accordingly, the Board's decision denying such relief was supported by substantial evidence.

IV.

Arias-Hernandez further contends that his immigration hearing violated due process.  The record compels a different conclusion.  "Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing."  *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (citation omitted).  In order to prevail on his due process claim, Arias-Hernandez must establish both "error and substantial prejudice."  *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007) (citation omitted).  "To trigger due process concerns, any error must have been such as might have led to a denial of justice."  *Hachem v. Holder*, 656 F.3d 430, 435 (6th Cir. 2011).

10

Arias-Hernandez alleges that he was denied a "full and fair hearing and suffered prejudice" because the IJ interrupted his testimony "twenty-two" times. CA6 R. 14, Pet.'s Br., at 16. He claims that these interruptions "precluded him from fully setting forth his claim in violation of his . . . statutory right to present evidence on his own behalf." *Id.* at 19. As the Board found, however, immigration judges have "broad discretion in conducting their hearings." *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). This discretion includes the ability to "interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. 1229a(b)(1). And the "mere intimidation or interruption by a judge does not render a hearing unfair." *Ahmed*, 398 F.3d at 725. Review of the transcript shows that the IJ's interruptions (of both sides) were nothing more than attempts to clarify answers or to obtain further information in order to fully develop the factual record. *See Hachem*, 656 F.3d at 435; *Abdulahad v. Holder*, 581 F.3d 290, 296 (6th Cir. 2009). Even when he was abrupt, "[b]y forcing [Arias-Hernandez's] counsel to get to the point, the IJ did no more than exercise his quasi-judicial powers to control the pace of the hearings, and to focus the hearings on relevant matters." *Ivezaj v. I.N.S.*, 84 F.3d 215, 220 (6th Cir. 1996), *superseded by statute on other grounds as stated in Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). There was no due process violation here.

Nor was there "substantial prejudice." *Garza-Moreno*, 489 F.3d at 241. Arias-Hernandez has "not identified what material facts, if any, were omitted from the record." *Abdulahad*, 581 F.3d at 296. At most, he claims that the IJ's interruptions prevented him from fully explaining his past persecution, which he alleges resulted in an adverse-credibility determination. But the record reflects that he was given ample opportunity to, and did, fully explain his past persecution. And he has offered no other instance of persecution of which he was unable to testify. Besides, the adverse-credibility determination was based not on the

paucity of detail in his testimony, but rather on his inability to provide a consistent timeline for important events. The IJ's questioning had no bearing on these inconsistencies.

Because Arias-Hernandez has established neither constitutional error nor prejudice, we affirm the Board's denial of his due process claim.

V.

For the foregoing reasons, the petition for review is denied.