**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0464n.06
Case No. 16-4253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Aug 09, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHAN DONG LIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney | ) | APPEALS |
| General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Petitioner Shan Dong Lin, a native and citizen of the People's Republic of China, seeks reversal of the Board of Immigration Appeals's (BIA) denial of his application for asylum. For the reasons articulated below, we deny Lin's petition for review.

**I.**

Lin left China for the United States after Chinese government officials twice forced his wife to undergo abortions. Leaving his wife and daughter behind, he entered the United States without inspection in April 2007. That autumn, Lin filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. He claimed that he and his family "suffered persecution from [the] Chinese government" because they violated family-planning policies, and he feared additional persecution if he returned to China.

On January 27, 2009, Lin joined the U.S.-based China Democracy Party ("CDP USA") because he "hate[d the] Chinese communist party." At his merits hearing before an Immigration Judge (IJ) only two weeks later, Lin abandoned his claim of past persecution and testified to his fear of returning to China due to his membership in the CDP USA. The IJ found Lin's new political affiliation bona fide and granted him asylum.[1]

The Department of Homeland Security (DHS) appealed to the BIA. The BIA sustained the appeal and vacated the grant of asylum, finding that Lin did not establish a well-founded fear of future persecution. Lin petitioned this court for review. We vacated the BIA's decision and remanded the case for clarification as to what burden of proof the BIA applied to Lin. *Lin v. Holder*, 454 F. App'x 472, 475 (6th Cir. 2012). The BIA again sustained DHS's appeal, explaining that Lin failed to show a "reasonable possibility" of suffering persecution if returned to China.

Lin petitioned for review once more, but we granted the Attorney General's unopposed motion to remand the case to the BIA to, among other things, consider the necessity of remanding to the Immigration Court for further fact-finding. *Lin v. Holder*, No. 12-4112 (6th Cir. Apr. 8, 2013) (Order). The BIA did just that: it remanded the case so that the parties could present additional evidence and the IJ could make any necessary fact findings before determining whether Lin had a well-founded fear of persecution.

Lin testified before the IJ on April 30, 2015. He also submitted new evidence in support of his asylum claim, including various articles he wrote for the CDP USA website, telephonic testimony and a written statement from Professor Myron Cohen, an affidavit from the CDP USA

---

[1] The IJ denied withholding-of-removal and Convention Against Torture relief. Lin does not appeal those decisions.

chairman, and several government publications. Although the IJ found Lin credible, she determined that Lin "has not demonstrated that he is genuinely a member of the CDP in the United States" because of a "lack of corroboration of his involvement in CDP activities from 2010 through 2013." According to the IJ, even assuming the authenticity of Lin's membership in the CDP USA, Lin did not demonstrate that he would be persecuted on that basis. Thus, because she "[could not] find that [Lin] has demonstrated a well-founded fear of return to China," the IJ denied Lin's application for asylum. The BIA dismissed Lin's appeal, and Lin now seeks review.

## II.

## A.

Where, as here, "the BIA reviews the [IJ]'s decision and issues a separate opinion, rather than summarily affirming the [IJ]'s decision, we review the BIA's decision as the final agency determination. To the extent the BIA adopted the [IJ]'s reasoning, however, this Court also reviews the [IJ]'s decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citations omitted). "We review 'any legal conclusions de novo and factual findings and credibility determinations for substantial evidence.'" *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011) (quoting *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009)). We uphold the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)). "As such, the petitioner must show that the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite . . . fear of persecution." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (citing *Elias–Zacarias*, 502 U.S. at 483–84).

**B.**

"To establish eligibility for asylum, an applicant must establish he is a 'refugee' within the meaning of" the Immigration and Nationality Act. *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). To establish his refugee status, Lin must prove "a well-founded fear of persecution" motivated by a protected ground, such as "political opinion." 8 U.S.C. § 1101(a)(42)(A). Lin's asylum claim hinges on his fear of future persecution if returned to China, rather than on any past persecution.

"A well-founded fear of future persecution 'must be both subjectively genuine and objectively reasonable.'" *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005) (quoting *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004)). "To prove a well-founded fear of future persecution, an applicant must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440–41 (1987)). The Attorney General concedes that Lin has satisfied the subjective component of the well-founded fear analysis. We must determine whether Lin has satisfied the objective component. That is, Lin bears the burden of proving that there is a reasonable possibility he will be singled out for persecution, or that there is a pattern or practice of persecution of an identifiable group to which he belongs. *Akhtar*, 406 F.3d at 404 (citing *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004)).

**III.**

**A.**

Lin has not offered any evidence establishing that the Chinese government is likely to target him personally because of his political activities in the United States. Conclusory

statements unsupported by specific evidence, like the ones on which Lin relies, are insufficient to support a petitioner's fear of future persecution. *See Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012) ("The fear of future persecution must be based on reasonably specific information showing a real threat to individual persecution, not mere assertions of fear of possible persecution or speculative conclusions.") (citing *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007)). Simply because he has attended meetings of, passed out flyers for, and participated in demonstrations by the CDP USA does not establish that Chinese authorities have pegged him for persecution, let alone know of Lin's involvement in the organization. Lin holds no leadership role within the CDP USA. His wife has not been questioned about his activism on behalf of the CDP USA, nor have Chinese authorities given her any problems. And although Lin wrote in his affidavit that he has been "blacklist[ed]" on account of his CDP USA activities and "would definitely [be] arrest[ed]" if returned to China, he could not provide the IJ any details supporting that avowal. Similarly, Lin could not explain what the CDP USA chairman meant when he wrote in his February 2009 "Certification" that Lin's identity has been "locked" by the Chinese government.

That Lin wrote six articles for the CDP USA website did not persuade the BIA or IJ otherwise. He provided view totals for only two of his articles—one published on January 27, 2015, with 401 views, and the other published on August 20, 2014, with 210 views. But those view totals are irrelevant at best and misleading at worst. Lin offered no evidence regarding readers of his articles. Likewise, he has not adduced evidence that Chinese authorities are even aware of the articles' existence. *See Jinan Chen v. Lynch*, 814 F.3d 40, 46 (1st Cir. 2016) (holding that petitioner did not establish well-founded fear of future persecution, as he "was not an officer or a director in the CDP [USA] and, although he had attended rallies and classes, his

only concrete links to the organization were a few pro-CDP [USA] articles posted on the group's website—a website that boasts thousands upon thousands of similar writings"). Plus, those view totals reflect the count as of November 2015, when Lin submitted a brief in support of his appeal to the BIA. But eight months earlier, when Lin submitted evidence to the IJ in advance of his hearing, his articles had just four and 78 views, respectively. As the IJ and BIA noted, there is no indication that the views increased due to added attention from Chinese government officials.

**B.**

Nor has Lin demonstrated that there is a practice of persecuting CDP USA members upon their return to China. "While there was evidence in the record demonstrating that members of the [CDP] in China had been arrested and imprisoned, there was no evidence establishing that Chinese authorities persecuted low-level members of organizations such as the CDP [USA] whose political activities occurred solely outside of China." *Wei Fang v. Holder*, 529 F. App'x 641, 642 (6th Cir. 2013) (per curiam).

Though Professor Myron Cohen, an anthropologist who studies "the general anthropology of China," testified on Lin's behalf, his testimony failed to move the IJ and BIA. He posited that it would be "impossible for [Chinese authorities] not to be aware of" Lin's articles because China has "one of the most sophisticated intelligence establishments in the world." But Professor Cohen offered no details supporting this broad declaration. He also admitted that the CDP USA and CDP are "two different entities," and that he is not familiar with anybody affiliated with the CDP USA who returned to China and faced persecution.

Lin argues that he presented other evidence corroborating his fear of persecution—the 2012 and 2014 annual reports by the Congressional-Executive Commission on China (CECC),

plus an affidavit from the CDP USA chairman—but that the BIA ignored it. This argument is unpersuasive.

Although the 2012 CECC report mentions the "[a]rbitrary detention of activists . . . for political writings, pro-democracy activity, and petitioning," these activists lived and protested in China. The 2014 CECC report is similarly unhelpful to Lin, as it references the detention of activists *based in China*. Neither report discusses whether the Chinese government monitors U.S.-based advocacy against the Communist Party or punishes participating individuals. Moreover, the IJ *did consider* these reports, and the BIA cited the exhibit containing the reports when it mentioned that Lin "has not established any connection between the CDP USA and the pro-democracy efforts in China." Thus, it appears that the BIA did, in fact, consider this evidence.

In his affidavit, Dong Xing Liu, chairman of the CDP USA, expresses his belief that Lin will be jailed "because of his active participation in the CDP activities if he is forced to return to China." No evidence in the record supports crediting this opinion; and Liu did not testify on Lin's behalf. *See Wei Fang*, 529 F. App'x at 642 (crediting the BIA for giving "limited weight to the statements of [the petitioner's] wife and the executive chairman of the CDP [USA] that [the petitioner] had been blacklisted by the Chinese government because there was no evidence to support their assertions and they were not available for cross-examination"). The affidavit also mentions three individuals who supposedly joined the CDP USA and were "immediately detained" upon returning to China, yet it offers no details about their political activity in the United States or their detention in China. True, the BIA's decision does not specifically refer to the affidavit. But "the BIA is not required to parse or refute on the record every individual argument or document offered by the petitioner." *Stserba v. Holder*, 646 F.3d 964, 978 (6th Cir.

2011) (quoting *Guo Ping Wu v. Holder*, 339 F. App'x 596, 603 (6th Cir. 2009)).  And, in any event, Liu's affidavit does not compel us to reach a conclusion contrary to that of the IJ and BIA. *See Ly v. Holder*, 421 F. App'x 575, 577 (6th Cir. 2011) ("We . . . will reverse only if the evidence not only supports a contrary conclusion, but *compels* it." (internal quotation marks and citation omitted)).

## IV.

For these reasons, we deny Lin's petition for review.